UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,

               Plaintiff,

      v.

MARTIN PULLIN,

               Defendant.
_____

REPORT & RECOMMENDATION

15-CR-6060W

**PRELIMINARY STATEMENT**

Defendant Martin Pullin ("Pullin") has been charged in an indictment with one count of sex trafficking of a minor, in violation of 18 U.S.C. §§ 1591(a)(1) and 1591(b)(2), and one count of attempted sex trafficking of a minor, in violation of 18 U.S.C. §§ 1591(a)(1), 1591(b)(2) and 1594(a). (Docket # 8). By Order of Hon. Elizabeth A. Wolford, United States District Judge, dated April 23, 2015, all pretrial motions in the above-captioned case have been referred to this Court pursuant to 28 U.S.C. §§ 636(b)(1)(A)-(B). (Docket # 9).

Currently pending before this Court for report and recommendation are Pullin's motions to suppress statements and evidence of a photographic identification.[1] (Docket # 13). An evidentiary hearing was held on July 9, 2015,[2] at which the government elicited testimony from Peter Uzarowski ("Uzarowski"), a Special Agent with the Department of Homeland

---

[1] Pullin's omnibus motion also sought, *inter alia*, a bill of particulars, *Brady* material, discovery and inspection, Rule 404(b), 608 and 609 rulings, disclosure of informants, *Jencks* material, *in camera* review of certain material, and preservation of rough notes. (Docket # 13). Each of these requests was either resolved by the parties or decided in open court by the undersigned on June 18, 2015. (Docket ## 15, 16).

[2] Neither party requested a transcript of the hearing, and neither has filed a post-hearing submission. Accordingly, this Court's recitation of the facts elicited at the hearing is based upon its review of the tape recording of the hearing, which is available to the parties for their review.

Security, who has been assigned to the Federal Bureau of Investigation ("FBI") Child Exploitation Task Force for the past two years. (Docket # 18).

## DISCUSSION

**I.      Suppression of Statements**

Pullin contends that statements he made to Uzarowski and FBI Task Force Officer Brian Tucker ("Tucker") on August 11, 2014 were unconstitutionally obtained because he was subjected to custodial interrogation without being advised of his *Miranda* rights and because his statements were otherwise involuntary. (Docket ## 13, 17).

Statements made during custodial interrogation are generally inadmissible unless a suspect first has been advised of his rights pursuant to *Miranda v. Arizona*, 384 U.S. 436 (1966). In *Miranda*, the Supreme Court held that the prosecution may not use a defendant's statements that are the product of custodial interrogation unless it demonstrates that the defendant was first warned of his Fifth Amendment privilege against self-incrimination and then voluntarily waived that right. *Miranda v. Arizona*, 384 U.S. at 444. As the Second Circuit has stated:

> [I]nterrogation consists of express questioning or its functional equivalent. . . . [T]he overarching "custody" question is whether a reasonable person in the suspect's position would have understood [himself] to be subjected to restraints comparable to those associated with a formal arrest.

*United States v. FNU LNU*, 653 F.3d 144, 148, 153 (2d Cir. 2011) (internal quotations and brackets omitted).

In determining whether a defendant was in custody, a court must undertake a two-part analysis. First, the court must ask "whether a reasonable person would have thought he

2

was free to leave the police encounter at issue." *United States v. Newton*, 369 F.3d 659, 672 (2d Cir.), *cert. denied*, 125 S. Ct. 371 (2004). If the answer is affirmative, the inquiry concludes. *Id.* If, however, the reasonable person would not have felt free to leave, the [c]ourt must then proceed to the second step of the analysis and determine whether, in addition to feeling not free to leave, the "reasonable person would have understood his freedom of action to have been curtailed to a degree associated with formal arrest." *Id.* (citing *California v. Beheler*, 463 U.S. 1121, 1125 (1983)). "Only if the answer to this second question is yes was the person 'in custody for practical purposes' and 'entitled to the full panoply of protections prescribed by *Miranda*.'" *Id.* (quoting *Berkemer v. McCarty*, 468 U.S. 420, 440 (1984)); *see United States v. Mitchell*, 966 F.2d 92, 98 (2d Cir. 1992) ("[d]ecisions in this circuit have emphasized that in the absence of actual arrest, an interrogation is not 'custodial' unless the authorities affirmatively convey the message that the defendant is not free to leave").

In examining whether a statement was made voluntarily, a court must consider the totality of the circumstances in which it was given "to determine whether the government agents' conduct 'was such as to overbear [a defendant's] will to resist and bring about [statements] not freely self-determined.'" *United States v. Kaba*, 999 F.2d 47, 51 (2d Cir.) (quoting *United States v. Guarno*, 819 F.2d 28, 30 (2d Cir. 1987) (citations omitted)), *cert. denied*, 510 U.S. 1003 (1993). In evaluating the totality of the circumstances, the court must assess: "(1) the characteristics of the accused, (2) the conditions of the interrogation, and (3) the conduct of law enforcement officials." *United States v. Awan*, 384 F. App'x 9, 14 (2d Cir. 2010) (quoting *Green v. Scully*, 850 F.2d 894, 901-02 (2d Cir.), *cert. denied*, 488 U.S. 945 (1988)), *cert. denied*, 131 S. Ct. 969 (2011). Where circumstances suggest evidence of "brutality, [p]sychological duress, threats, [or] unduly prolonged interrogation," statements will be deemed involuntary. *United*

*States v. Moore*, 670 F.3d 222, 233 (2d Cir.) (alteration in original) (quoting *United States v. Verdugo*, 617 F.3d 565, 575 (1st Cir. 2010), *cert. denied*, 131 S. Ct. 954 (2011)), *cert. denied*, 133 S. Ct. 48 (2012).

Uzarowski testified credibly to the circumstances under which Pullin answered the agents' questions, and those circumstances reveal that he was not in custody and that his responses and statements were voluntary. Uzarowski and Tucker met Pullin at a location that was suggested by Pullin's girlfriend. The meeting occurred at a residence at 41 Derringer Place in Rochester on August 11, 2014 during the day, and other individuals were present on the porch and in the vicinity of the house when the agents arrived in an unmarked car. Both agents were dressed in plainclothes and neither withdrew his weapon, although Uzarowski testified that Tucker's may have been visible in its holster. Pullin subsequently arrived, and the agents approached him, identified themselves and said they wanted to talk to him. Pullin consented, and the agents asked if they could talk in a more private place. The agents and Pullin walked around the house into the backyard, where no one else was present.

Uzarowski testified that the backyard may have been fenced and that they stood for the entirety of the interview, which lasted approximately fifteen to twenty minutes. Neither agent administered *Miranda* warnings, and they advised Pullin that they were conducting an investigation in which a witness had reported that she had worked as a prostitute for Pullin. Pullin was not handcuffed nor told he was under arrest or not free to leave. Uzarowski testified that he believes the subject of cooperation was not discussed, although Pullin may have asked about what would happen next. Uzarowski explained that if Pullin had made such an inquiry, Uzarowski would have responded that it was not up to the agents, but to the United States Attorney, to decide.

According to Uzarowski, at no time did Pullin ask for an attorney or ask the agents to stop questioning him.  Uzarowski testified that no threats or promises were made to Pullin.  At the conclusion of the interview, Pullin and the agents returned to the front of the house.  The agents had no further contact with Pullin that day.

On these facts, I easily conclude that Pullin was not in custody during the questioning by the agents and that his statements were voluntary.  *See United States v. Mitchell*, 966 F.2d at 98-99 (defendants were not in custody during interviews at their residences; "the entire interview occurred in the familiar surroundings of [defendant's] home"); *United States v. Schliebener*, 2013 WL 5936665, *3 (W.D.N.Y. 2013) (defendant not in custody when interviewed at his residence by uniformed officer; "a reasonable person would have understood that they were free to stop answering questions and either re-enter their house, or ask [the officer] to leave"); *United Sates v. Titemore*, 335 F. Supp. 2d 502, 507 (D. Vt. 2004) (defendant was not in custody when questioned on the deck of his residence where officer did not tell defendant that he was not free to leave, use restraints or brandish his weapon and where officer left the residence without arresting defendant), *aff'd*, 437 F.3d 251 (2d Cir. 2006).

II.     **Suppression of Identification**

Pullin moves to suppress evidence of a photographic identification made on February 28, 2014 by a government witness identified as "Minor Victim 1" at the hearing. (Docket # 13).

Evidence of an out-of-court photographic identification will be suppressed under the due process clause if "the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification."

5

*Simmons v. United States*, 390 U.S. 377, 384 (1968). In determining whether to exclude evidence of a pretrial identification, a court must first consider whether the identification procedure was unduly suggestive. *Id.* To decide whether a photographic array is unduly suggestive, a court should consider several factors, including "the size of the array, the manner of presentation by the officers, and the array's contents." *United States v. Maldonado-Rivera*, 922 F.2d 934, 974 (2d Cir. 1990), *cert. denied*, 501 U.S. 1233 (1991). Specifically, the court must consider "whether the picture of the accused . . . so stood out from all the other photographs as to suggest to an identifying witness that [the accused] was more likely to be the culprit." *Jarrett v. Headley*, 802 F.2d 34, 41 (2d Cir. 1986) (internal citations omitted).

If the identification procedure was unduly suggestive, the court must proceed to determine whether the identification nevertheless possesses "sufficient aspects of reliability." *United States v. Bubar*, 567 F.2d 192, 197 (2d Cir.) (citing *Manson v. Brathwaite*, 432 U.S. 98, 109-17 (1977)), *cert. denied*, 434 U.S. 872 (1977). "Even if the procedure was unnecessarily (or impermissibly) suggestive . . .[,] a district court may still admit the evidence 'if, when viewed in the totality of the circumstances, it possesses sufficient indicia of reliability.'" *United States v. Bautista*, 23 F.3d 726, 729-30 (2d Cir.) (footnote omitted) (quoting *United States v. Simmons*, 923 F.2d 934, 950 (2d Cir.), *cert. denied*, 500 U.S. 919 (1991)), *cert. denied*, 513 U.S. 862 (1994).

Uzarowski testified that on February 28, 2014, he and Tucker met with Minor Victim 1 at the Bivona Child Advocacy Center. Before the identification procedure, she was first interviewed by a Bivona representative and then by Tucker. Among other subjects, she discussed "Martin," although she never described him. Following the interview, Tucker accompanied by Uzarowski, showed her one photographic array containing six black and white

6

photographs. (*See* Government Exhibit ("G. Ex.") 1). Uzarowski testified that Tucker told her he would be showing her an array of photographs and that she may or may not recognize someone in the photographs. The witness "immediately" pointed to the third photograph number and said it was "Martin." She was asked to initial and date the photograph, which she did. Uzarowski testified that neither he nor Tucker suggested whom the witness should identify. Based on this record, I find that nothing about the procedure used with Minor Victim 1 was unduly suggestive. *See United States v. Williams*, 2015 WL 429087, *17 (W.D.N.Y.) (manner of presentation of array not unduly suggestive where it did not suggest to the witness which, if any, photograph to select); *report and recommendation adopted*, 2015 WL 3454430 (W.D.N.Y. 2015); *United States v. Guzman*, 2015 WL 774211, *7 (W.D.N.Y. 2015) (same).

Nor is there anything about the array itself that was unduly suggestive. The array that Minor Victim 1 viewed contains six photographs of different African-American men of roughly similar ages. (G. Ex. 1). All are head shots and feature men with short hair and moustaches. Pullin is the only individual with braided hair, although his hair is also groomed closely to his head like the others. His moustache and that of another man appear slighter or less visible than the others. Two appear to have very slight beards, and one (not Pullin) appears to have a lighter complexion than the others. The background hues in the photographs are similar. I find that the minor differences in Pullin's photograph (braids and a less pronounced moustache) are not significant enough to "suggest to an identifying witness that [the defendant] was more likely the culprit." *Jarrett v. Headley*, 802 F.2d at 41; *see United States v. Bubar*, 567 F.2d at 198-99 (array not unduly suggestive although defendant's hair was long and darker and his moustache was darker and bushier than filler photographs); *Echevarria-Perez v. Burge*, 779 F. Supp. 2d 326, 336 (W.D.N.Y. 2011) ("there is no shortage of cases finding lineups and photo

7

arrays acceptable despite differences in hairstyles") (internal quotations omitted) (collecting cases). Further, Uzarowski testified that Minor Victim 1 had not provided any description of Pullin prior to the identification procedure, and thus had not indicated that Pullin had braided hair or a light moustache. *Cf. Frazier v. New York*, 187 F. Supp. 2d 102, 111 (S.D.N.Y. 2002) (lineup suggestive where plaintiff was only one with "alternating-length dreadlocks, and this hairstyle was the only consistent, distinctive feature in [the witness's] various descriptions"), *aff'd*, 156 F. App'x 423 (2d Cir. 2005).

## CONCLUSION

For the reasons stated above, I recommend that the district court deny Pullin's motions to suppress statements and evidence of photographic identifications. (Docket ## 12, 13).

*s/Marian W. Payson*
MARIAN W. PAYSON
United States Magistrate Judge

Dated: Rochester, New York
July 30, 2015

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

**ORDERED**, that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report and Recommendation in accordance with the above statute and Rule 59(b) of the Local Rules of Criminal Procedure for the Western District of New York.[3]

The district court will ordinarily refuse to consider on *de novo* review arguments, case law and/or evidentiary material which could have been, but was not, presented to the magistrate judge in the first instance. *See*, *e.g.*, *Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co.*, 840 F.2d 985 (1st Cir. 1988).

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.** *Thomas v. Arn*, 474 U.S. 140 (1985); *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15 (2d Cir. 1989); *Wesolek v. Canadair Ltd.,* 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 59(b) of the Local Rules of Criminal Procedure for the Western District of New York, "[w]ritten objections . . . shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." **Failure to comply with the provisions of Rule 59(b) may result in the District Court's refusal to consider the objection.**

Let the Clerk send a copy of this Order and a copy of the Report and Recommendation to the attorneys for the parties.

**IT IS SO ORDERED.**

*s/Marian W. Payson*
MARIAN W. PAYSON
United States Magistrate Judge

Dated: Rochester, New York
        July 30, 2015

---

[3] Counsel is advised that a new period of excludable time pursuant to 18 U.S.C. § 3161(h)(1)(D) commences with the filing of this Report and Recommendation. Such period of excludable delay lasts only until objections to this Report and Recommendation are filed or until the fourteen days allowed for filing objections has elapsed. *United States v. Andress*, 943 F.2d 622 (6th Cir. 1991); *United States v. Long*, 900 F.2d 1270 (8th Cir. 1990).